UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES SIMMS,
                              Petitioner,

        -vs-                                          **DECISION AND ORDER**
                                                     **No. 07- CV- 6307(VEB)**


DARWIN LaCLAIR, Superintendent

                    Respondent.
_____

## I.        Introduction

        Petitioner *pro se* Charles Simms ("Simms" or "Petitioner") has filed a petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his detention

in state custody. Sims is incarcerated pursuant to a judgment of conviction entered against him

following a jury trial of four counts of robbery in the second degree, which arose out of two

separate incidents.

        The parties have consented to disposition of this matter by a magistrate judge pursuant to

28 U.S.C. § 636(c)(1).

## II.       Factual Background and Procedural History

### A.        The Trial

        What follows is a summary of the prosecution's proof at trial. Shortly before 3:00 a.m.,

Simms and a confederate entered an A-Plus Mini-Mart at 1140 Lyell Avenue in the City of

Rochester. One employee, April Swaney, was working at the time. Simms asked Swaney

what time the bus came and then immediately drew out a gun, which Swaney believed to be a

real firearm, but which was actually a pellet gun. While brandishing the gun, Simms demanded

that Swaney give them all the money in the till and threatened to kill her if she did not comply.

Swaney turned over to Petitioner the contents of the cash register, along with several packs of

Newport brand cigarettes. Simms and his cohort departed, but returned soon thereafter and

demanded more money. When Swaney told him all the rest of the money was in a safe, he ran out

of the store again.

Several hours later, Simms entered another A-Plus Mini-Mart located at 217

Scottsville Drive. The only store clerk working at the time was Corey Pratt. Simms asked him

where the candy was. Petitioner picked out two 10-cent pieces of gum, paid for them, then turned

to his associate and said, "[D]o it." Petitioner's co-defendant then pulled out the pellet gun, and

demanded money. Pratt, who "thought [the pellet gun] was a pistol," pulled the cash drawer out

of the register and put it on the counter. Simms and his cohort emptied the cash register of its

contents and then fled.

After being apprehended by the police, Simms confessed to robbing both convenience

stores. In addition, both robberies were captured on the stores' video-monitoring security system,

and recordings of the two incidents robberies were played for the jury.

The jury convicted Simms of all four charges as set forth in the indictment.

## B.    Sentencing and the Direct Appeal

Upon the prosecutor's motion, and following a hearing, Simms was adjudicated a

persistent felony offender under N.Y. Penal Law § 70.10. For the convictions resulting from the

robberies committed on Lyell Avenue, Simms was sentenced to concurrent terms of 25 years to

life. For the convictions stemming from the robberies committed on Scottsville Drive, Simms

was sentenced to concurrent terms of 25 years to life. The two sets of sentences were set to run

consecutively, for an aggregate sentence of 50 years to life.

On direct appeal, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed Petitioner's conviction. *People v. Simms*, 24 A.D.3d 1281 (App. Div. 4th Dept. 2005). Leave to appeal the to the New York Court of Appeals was denied. *People v Simms*, 6 N.Y.3d 838 (N.Y. 2006).

### C.    The Habeas Petition

This timely habeas petition (Docket No. 1) followed in which Simms alleges the following grounds for relief: (1) ineffectiveness of trial counsel at a pre-trial suppression hearing; (2) erroneous rulings of the trial court amounting to a deprivation of the constitutional right to due process; (3) erroneous denial of the motion to dismiss the indictment based on an alleged violation of the Interstate Agreement on Detainers ("IAD"); (4) unconstitutionality of New York's Persistent Felony Offender ("PFO") Statute; and (5) harshness and excessiveness of the consecutive sentences.

In his Answer and Opposition and Memorandum of Law (Docket No 5), Respondent has conceded that the first two claims are properly exhausted but asserts that they are without merit. Respondent asserts that Petitioner's other claims, regarding the trial court's denial of his motion for a dismissal of his indictment based on an alleged violation of the Interstate Agreement on Detainers, whether the New York State Persistent Felony Offender sentencing statute is constitutional, and whether the imposed sentence was harsh and excessive, are "otherwise without merit or unreviewable."

For the reasons that follow, the claims are denied and the Petition is dismissed.

### III.    Applicable Legal Principles

Federal habeas review is available for a State prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not subject to federal habeas review. *See*, *e.g.*, *Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *Cupp v Naughten*, 414 U.S. 141, 146 (1970).

Because Simms' petition, filed in 2007, postdates the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered titles of the U.S.C.), AEDPA's revisions of 28 U.S.C. § 2254 govern the proceeding. *Lurie v. Wittner*, 228 F.3d 113, 120-21 (2d Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); Lindh v. Murphy, 521 U.S. 320, 322-23, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997); Tankleff v. Senkowski, 135 F.3d 235, 242 (2d Cir.1998). The Second Circuit has summarized the requirements placed upon a habeas petitioner by the AEDPA standard as follows:

> Under AEDPA, to prevail on a petition for a writ of habeas corpus, a petitioner confined pursuant to a state court judgment must show that the court's "adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[C]learly established Federal law" refers to holdings of the Supreme Court, as opposed to dicta, as of the time of relevant state court decisions. *Carey v. Musladin*, 549 U.S. 70, 74-75, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. An "unreasonable application" occurs when a "state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* "Unreasonableness is determined by an 'objective' standard." *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir.2005) (quoting

*Williams*, 529 U.S. at 409, 120 S.Ct. 1495)..

*Friedman v. Rehal*, 618 F.3d 142, 152-153 (2d Cir. 2010) (Korman, D.J., sitting by designation)

The Supreme Court has stated that "unreasonableness" should not be conflated with "clear error"

because "[t]he gloss of clear error fails to give proper deference to state courts." *Lockyer v.*

*Andrade*, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). "[A] federal habeas court is

not empowered to grant the writ just because, in its independent judgment, it would have decided

the federal law question differently. The state court's application must reflect some additional

increment of incorrectness such that it may be said to be unreasonable." Aparicio v. Artuz, 269

F.3d 78, 94 (2d Cir.2001). However, "the increment need not be great; otherwise, habeas relief

would be limited to state court decisions so far off the mark as to suggest judicial incompetence."

Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

"[A] 'state court adjudicates a state prisoner's federal claim on the merits when it (1)

disposes of the claim on the merits, and (2) reduces its disposition to judgment.' " Jimenez v.

Walker, 458 F.3d 130, 142 (2d Cir.2006) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d

Cir.2001) (quotation and alteration marks omitted)). Where a claim has been "adjudicated on the

merits," 28 U.S.C. § 2254(d), "deference [is] mandated under AEDPA," *Sellan*, 261 F.3d at 310,

in the federal habeas court's review of petitioner's claim. All of Simms' claims have been

adjudicated on the merits by the state courts.

## IV.    Analysis of the Petition

### A.    Ground One: Ineffectiveness of Trial Counsel at the Suppression Hearing

Petitioner claims his Sixth Amendment right to counsel was violated at his suppression

hearing when the trial court refused to appoint an attorney who was, according to Simms,

"conflict-free", and by the trial court's ruling which allowed him (Simms) to act as co-counsel for the remainder of his suppression hearing.

### 1.    Overview of the Law on Conflicts of Interest

To establish that trial counsel's performance was constitutionally deficient, a defendant must show that "the lawyer's performance 'fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir.2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *accord*, *e.g.*, *Torres v. Berbary*, 554 F.3d 322, 325 (2d Cir. 2009). "*Strickland* made clear that even if counsel's performance is found professionally unreasonable, 'any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.'" *Torres*, 554 F.3d at 325 (quoting *Strickland*, 466 U.S. at 692). The inquiry thus turns to "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting 466 U.S. at 695). When a criminal defendant claims that defense counsel was "burdened by an actual conflict of interest," a "limited presumption of prejudice" is warranted. *Strickland*, 466 U.S. at 692; *accord*, *e.g.*, *Torres*, 554 F.3d at 325. However, "the presumption of prejudice attaches 'only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that "an actual conflict of interest adversely affected his lawyer's performance."'" *Torres*, 554 F.3d at 325 (quoting *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

## 2.      Factual Background Pertinent to this Claim

Prior to the start of Petitioner's suppression hearing, the trial court granted his motion for new counsel, and James Hinman Esq.,was assigned to represent him. Shortly after Attorney Hinman was appointed, Petitioner began submitting *pro se* applications directly to the trial court in an attempt to bypass his newly assigned attorney. Petitioner made numerous interjections and outbursts throughout the suppression hearing, and had to be repeatedly admonished not to act in a "disruptive" manner. He also continued to submit *pro se* applications to the court, notwithstanding the fact that he was represented by counsel. *See* 9/30/94 Tr. at 68, 82-84, 86-87, 99, 138, 185; 10/5/94 Tr. at 5-10, 17; 10/7/94 Tr. at 38, 48, 85; At one point, Petitioner called the prosecutor a "faggot".  10/7/94 Tr. at 47-48.

On the second day of the suppression hearing, Simms made a *pro se* request to be appointed as co-counsel so that he could conduct his own cross-examination of the witnesses. Simms told the court that he felt Attorney Hinman's cross-examination was not bringing out what he believed to be the salient points.  10/5/94 Tr. at 8-9. Petitioner unequivocally invoked his "right under the constitution" to act as his own counsel, explaining that he had experience acting as his own counsel in other proceedings, that he knew how to phrase questions and that he would conduct himself in a professional manner. 10/5/94 Tr. at 7-9. The trial court reserved decision.

At the next hearing date two days later, defense counsel placed on the record that Petitioner had asked him to make three applications, which he declined to do on the grounds that they were legally and factually baseless. 10/7/94 Tr. at p. 3-4. Consequently, Petitioner asserted that Attorney Hinman had a conflict of interest and requested that he be terminated as counsel. *Id.* at 4. Attorney Hinman also asked to be excused from representing Simms. Ultimately,

however, the trial court determined that neither Petitioner nor Attorney Hinman was able to articulate a basis for concluding that there was "good cause" for Attorney Hinman's removal. Although both Simms and defense counsel were unanimous in asserting that attorney-client relationship had disintegrated, it was clear to the trial court that this was not due to any fault of Attorney Hinman's but rather was the result of Petitioner's unreasonable and "unjustified hostility" toward him.

The trial court thus found that Petitioner had not established "good cause" to have substitute counsel appointed. The trial court also found that Petitioner was literate and had a basic understanding of the legal system, since the court had observed Petitioner doing legal research and had received several *pro se* motions from him. Accordingly, the trial court fashioned a compromise remedy which respected Petitioner's right to self-representation and his desire to question witnesses himself: Petitioner was to act as his own co-counsel during the suppression hearing and ask his own questions of the witnesses.[1] *See* 10/5/94 Tr. at 9-10.

On October 11, 1994, Attorney Hinman renewed his application to be relieved as Simms' counsel. The trial court granted the application, observing that Attorney Hinman had "done a good job under difficult circumstances." 10/11/94 Tr. at p. 2-6. The trial court then appointed Michael Schiano, Esq., to represent Petitioner, and adjourned the proceedings again. At the continued hearing date, Simms refused to appear in court despite his having been advised that the proceedings would continue without him if he wilfully absented himself. Given that he had

_____

[1]       While there is no Constitutional right to such hybrid representation (see People v White, 73 NY2d 468, 477 [1988], cert denied 493 US 859), the Court has the authority to allow such representation on a purely discretionary basis. see generally People v Richardson, 4 NY2d 224 [1958], cert denied 357 US 943 [while defendant represented by counsel had no Constitutional right to address jury directly, "trial court . . . is empowered to allow the defendant himself to sum up if, in the exercise of a wise discretion, it deems such action called for").

issued the proper warnings to Simms and explained to him the consequences of failing to appear, the trial judge continued the hearing without Simms being present. The suppression hearing's ultimate outcome was adverse to Simms; his confessions to the police were found to be voluntary and admissible.

### 3. The State Courts' Rulings Correctly Applied Federal Law

As noted above, the trial court denied Simms' request for substitute counsel on the basis that he had not demonstrated the requisite "good cause." *See People v. Linares*, 2 N.Y.3d 507, 510 (N.Y. 2004) ("Although defendants have no choice in selecting their assigned counsel, trial courts should substitute counsel when a defendant can demonstrate 'good cause'.") (quoting *People v Medina,* 44 N.Y.2d 199, 207 (N.Y. 1978)). On direct appeal, the Appellate Division agreed:

> Defendant failed to meet his burden of establishing good cause for substitution of counsel. A defendant is guaranteed meaningful representation but is not guaranteed a harmonious relationship with defense counsel, particularly where, as here, the defendant is contumacious. The tension that arose between defendant and defense counsel because of defendant's disagreement with defense counsel's strategy does not constitute the requisite good cause for substitution. Indeed, the record establishes that the only conflict of interest was that created by defendant because of his unjustified hostility toward his assigned counsel.

*People v. Simms*, 24 A.D.3d at 1282 (internal citations omitted). The state courts reasonably determined the facts in light of the evidence presented, and their denials of the request for substitute counsel comported with Federal law.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. However, "the right to choose one's own counsel is not

absolute." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir.2004) (citing *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir.1993)). Rather, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." *Id.* (citing *Wheat*, 486 U.S. at 159; *Locascio*, 6 F.3d at 931). As the Second Circuit has observed, because a defendant's right to counsel of his or her choice is "not absolute," a trial court "may require" a defendant to proceed to trial with counsel not of defendant's choosing, although it "may not compel" defendant to proceed with an attorney who is "incompetent." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir.1997); *see also United States v. Mills*, 895 F.2d 897, 904 (2d Cir.1990) (holding that an indigent defendant is not entitled to counsel of his choice; rather, he is entitled only to effective representation); *United States v. Graham*, 91 F.3d 213, 217, 221 (D.C.Cir.1996) (holding that defendant must establish prejudice to obtain reversal based on court's refusal to appoint substitute counsel). Thus, the law is clear that as a matter of both Federal and New York State constitutional law Simms was not entitled to appointed counsel of his own choosing; nor was he constitutionally entitled to standby counsel of his choice. *See Mills*, 895 F.2d at 904 (citation omitted).

The standards as articulated by the New York courts and the Federal courts are essentially the same. *Compare People v. Linares*, 2 N.Y.2d at 510 ("In determining whether good cause exists, a trial court must consider the timing of the defendant's request, its effect on the progress of the case and whether present counsel will likely provide the defendant with meaningful assistance. Good cause determinations are necessarily case-specific and therefore fall within the discretion of the trial court.") *with United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir.2001)

("The determination of whether or not the motion for substitution of counsel should be granted is within the discretion of the trial court. . . ."; in evaluating whether trial court abused its discretion in denying a defendant's motion for substitution of counsel, the following factors are relevant: the timeliness of the defendant's motion; adequacy of the trial court's inquiry into the defendant's complaint about counsel; and whether the attorney/client conflict was "'so great that it had resulted in total lack of communication preventing an adequate defense'") (quoting *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). Following *Simeonov*, the Second Circuit explicitly added a fourth factor–the extent to which a defendant's own conduct contributed to the communication breakdown. *United States v. John Doe #1*, 272 F.3d 116, 123 (2d Cir. 2001) (citations omitted).

"[A]n actual conflict of interest exists when the attorney's and the defendant's interests diverge with respect to a material legal or factual issue or to a course of action." *United States v Armienti*, 313 F.3d 807, 811 (2d Cir 2002). Although there was a breakdown in communication between Simms and assigned counsel, that is insufficient to create an "actual conflict of interest" where the tension was created solely by Simms' unreasonable and unjustified hostility towards his assigned attorney. As the Second Circuit has explained, a defendant cannot create a conflict of interest merely by expressing vigorous dissatisfaction with the attorney's performance or by threatening the attorney. *John Doe #1*, 272 F3d at 124, *cert. denied sub nom. Findley v. United States*, 537 US 851 (2002).

In *John Doe #1*, the Second Circuit found that the defendant "created most, if not all, of the problems with [trial counsel] by refusing to cooperate with him, acting aggressively, and making threatening gestures and remarks towards [counsel]." According to the attorney, whom

the district court credited, defendant's refusal to listen to counsel's reasoning concerning the defense and his continuing violent behavior caused the attorney to question whether he could work with defendant and to fear for himself and his family's safety. Despite the "intense rift" between attorney and client in *John Doe #1*, the Second Circuit nevertheless found that the conflict between the two was not so great that it resulted in total lack of communication preventing an adequate defense and that the defendant's responsibility for the conflict was so substantial and unjustified that it outweighed all of the other factors. As was the case in *John Doe #1*, it is clear that Simms was the "source of the breakdown in communications . . . and therefore that substitution of new counsel was unlikely to solve the problem." 272 F.3d at 125. The record simply does not support a finding that there was any "cause" for substitution of counsel since there was no "actual conflict" of interest–merely Simms' unjustified hostility towards his competent assigned attorney.

**B.      Ground Two: "Trial Court Errors"**

**1.      Failure to Grant Motion Challenging Jury Pool Upon "Fair Cross Section" Grounds**

Petitioner claims the trial court erred in denying his oral motion challenging the composition of the jury pool on the basis that it did not represent a fair cross section of the community. The Sixth Amendment has been interpreted to require that a jury be selected from a representative cross-section of the community. *Taylor v Louisiana*, 419 U.S. 522, 526-27 (1975) ("Both in the course of exercising its supervisory powers over trials in federal courts and in the constitutional context, the [Supreme] Court has unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community.").

In *Duren v Missouri*, 439 U.S. 357 (1979), the Supreme Court instituted a three-part test for jury challenges. *Berghuis v. Smith*, __ U.S. __, 130 S. Ct. 1382, 1392 (2010) ("*Smith*"). To establish a *prima facie* case for violation of the fair cross-section requirement under the Sixth Amendment, "a defendant must prove that: (1) a group qualifying as 'distinctive; (2) is not fairly and reasonably represented in jury venires, and (3) 'systematic exclusion' in the jury selection process accounts for the underrepresentation." *Smith*, 130 S. Ct. at 1392 (citing *Duren*, 439 U.S. at 364); *see also People v. Guzman*, 60 N.Y.2d 403, 410 (N.Y. 1983) (*per curiam*) (" In order to establish a violation of due process based on the absence of a fair cross section of the community in the jury pool, a defendant must demonstrate that a substantial and identifiable segment of the community was not included in the Grand Jury pool because the process used to select grand jurors "systematically excluded" that group from service[.]" (citing *Peters v. Kiff*, 407 U.S. at 503-504, *Duren v. Missouri*, 439 U.S. at 364), *cert. denied*, 466 U.S. 951 (1984). "Once the defendant has established a *prima facie* case, the burden then shifts to the government to show that 'a significant state interest [is] manifestly and primarily advanced by those aspects of the jury selection process . . . that result in the disproportionate exclusion of a distinctive group.'" *Smith v. Berghuis*, 543 F.3d at 336 (quoting *Duren*, 439 U.S. at 367-68) (alteration in *Smith*)).

In this case, Petitioner claims his jury pool's composition violated the fair cross-section requirement of the Sixth Amendment as it significantly under-represented African-Americans. Petitioner's motion before the trial court was based solely on the fact that there were four African-Americans in the jury pool. T.36-37. On direct appeal, the Appellate Division summarily denied the claim as "without merit." The state courts' rulings on this claim were neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

In determining whether there has been a violation of the Sixth Amendment fair cross-section requirement, the reviewing court must consider (1) whether the group alleged to be excluded is a recognizable distinctive group in the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that the under representation is due to a systematic exclusion of the group in the jury selection process.

Simms fulfilled the first prong of the *Duren* test, as it is well established that African-Americans are considered to be a "distinctive group in the community." *E.g., Castaneda v Partida*, 430 U.S. 482, 494 (1977) (citations omitted). However, Simms has never made the required showings as to the second and third prongs of the *Duren* test. As to the second prong, he has come forward with enough statistical proof enabling a reviewing court to conclude, by any statistical method, that there was a constitutionally significant disparity between the representation of the "distinctive group" and the rest of the relevant population in Erie County jury venires. The only figures Simms has cited, without references, are that there were four (4) African-Americans in his jury venire of eighty (80) persons and that African-Americans comprise 45% of the Erie County general population. Moreover, even if statistics alone, from a single criminal proceeding, could prove systematic exclusion," *United States v. Miller*, at 658, "they would have to be of an overwhelmingly convincing nature," *id.* (citing *Duren v. Missouri*, 439 U.S. at 366). Even assuming *arguendo* that Simms could show that the representation of the group in question was not fair and reasonable in relation to the number of such persons in the community (the second prong), he has failed to come forward with facts to substantiate his contention that any under-representation occurred as a result of the systematic exclusion of the

-14-

group in the jury selection process. *See Smith v. Berghuis*, 130 S.Ct. at 1392-93 ("Duren also demonstrated systematic exclusion with particularity. He proved that women's underrepresentation was persistent–occurring in every weekly venire for almost a year–and he identified the two stages of the jury–selection process "when . . . the systematic exclusion took place.") (quoting *Duren*, 439 U.S. at 366). There has been no such showing here.

Accordingly, there is no basis for finding that the state courts incorrectly applied Federal law in denying Petitioner's fair cross-section claim. See, e.g., Albrecht v. Horn, 314 F. Supp 2d 451 (E.D. Pa. 2004)  (holding that where petitioner failed to provide basic facts concerning how many of the summoned jurors were of minority background and how that number compared to the population from which the jury pool was drawn, it was virtually impossible to ascertain whether there was a racially disparate impact of the method of jury selection), *vacated and remanded on other grounds*, 485 F.3d 103 (3d Cir. 2007); *see also Parker v. Phillips*,  717 F. Supp.2d 310, 336 (W.D.N.Y. 2010) (Bianchini, M.J.) ("First, there is the issue of whether Parker has come forward with enough statistical proof enabling a reviewing court to conclude, by any statistical method, that there was a constitutionally significant disparity between the representation of the "distinctive group" and the rest of the relevant population in Erie County jury venires. Second, even assuming that Parker could show underrepresentation, he has not made a sufficient showing on the third prong of *Duren*, which requires him to show that the exclusion was "systematic" and that it caused the underrepresentation. . . . Parker has identified a number of factors, that taken singly or in combination, only *might* have contributed to

underrepresentation of the distinctive group at issue.") (emphasis in original).[2]

On the record before this Court, I agree with Respondent that Simms has not demonstrated a *prima facie* case under *Duren*. As a result, Petitioner's Sixth Amendment fair cross-section claim must be denied.

## 2. Denial of Request for an Adjournment

Simms contends that the trial court did not provide him with sufficient time to review his attorney's file after Simms advised the court of his intention to represent himself, his wish to have Attorney Jan Egger serve only as stand-by counsel, and his plan to conduct the cross-examination of Police Officer Thomas Johns. T.415-416.

Before Petitioner commenced his cross-examination of Officer Johns, he requested an opportunity to review his attorney's case file. T.446. In an attempt to accommodate Petitioner, the trial court took a two and one-half hour recess and advised Petitioner as follows:

> Mr. Simms, just for the record, I want to make sure you have an adequate opportunity to prepare for cross-examination. Now, the easy thing for me to do would be to rush through this and put you at a disadvantage. And I'm not going to do that, sir. I want to give you at least a couple hours to talk over with your legal counsel your strategy for cross-examining this witness and any questions. Perhaps he can even write out some questions in proper form for you and you can do it over a baloney sandwich or something, that way you have a couple hours to get prepared and I don't have you at an unfair advantage here. I want you to have a

---

[2] *See also Welch v. Artus*, 2007 WL 962931, at *28 (W.D.N.Y. Mar. 29, 2007) (report and recommendation of Bianchin, M.J., adopted) ("Assuming *arguendo* that Welch satisfied the first two requirements necessary to establish a *prima facie* violation of the fair cross-section requirement . . . .Welch did not make a showing that the under-representation was inherent in the particular jury selection process utilized.") (citing *Veliz v. Crown Lift Trucks*, 714 F. Supp. 49, 55 (E.D.N.Y.1989) (Plaintiff failed to make prima facie showing of underrepresentation of Hispanics on venire in products liability action, where plaintiff failed to present any statistical proof of underrepresentation, or to demonstrate that random selection process employed by court using registered voter and licensed driver lists resulted in any systematic exclusion of Hispanics; *United States v. Miller*, 116 F.3d at 658 (rejecting Sixth Amendment fair cross section claim and holding that defendants did not show any systematic exclusion of minorities in the Eastern District jury-selection process where there was no evidence that members of any ethnic group had been hindered in their attempts to register to vote or to obtain driver licenses, and defendant did not show any other kind of systematic exclusion of ethnic minorities).

full and fair opportunity. You remember at any time if you change your mind and you want Mr. Egger to return to the role of counsel as opposed to stand by counsel or advisor, all you have to do is let me know that. You're aware of all the pitfalls and dangers about being your own lawyer here, right? And you're choosing to continue?

T.448-49. Petitioner responded, "Yes, sir," T.449, indicating that he wished to continue to represent himself notwithstanding the potential dangers in doing so. Before he was allowed to proceed *pro se*, the judge advised Simms that since he was electing to represent himself, he would be responsible for cross-examining the rest of the prosecution's witnesses. T.450-451.

Immediately thereafter, Simms requested that the trial judge give him an additional "night or two" to prepare for the cross-examination of Officer John. The trial judge refused, noting that the direct examination Officer Johns had only taken fifteen minutes, and given the brevity of the testimony, an additional "night or two" was a disproportionately long time to review it. The trial judge then took a two and one-half hour recess, during which time Petitioner was able to review Officer Johns' direct testimony and prepare his cross-examination with the assistance of stand-by counsel, Attorney Egger. After the recess, Petitioner began his cross-examination of Officer Johns, which continued into the next day of trial (March 23, 1995) T.533. Thus, Petitioner had the night of March 22nd to review his attorney's file and prepare further for Officer Johns' cross-examination.

Petitioner claims that denial of his request for an adjournment of a "night or two" prior to the start of his cross-examination of Officer Johns constituted an abuse of discretion by the trial judge. The gravamen of Simms' claim appears to be that he was "prevented from mounting a meaningful defense" because the trial court did not allow Simms' the adjournment or continuance he allegedly needed to counter Officer Johns' testimony. *Drake v. Portunondo*, 321

-17-

F.3d 338, 344 (2d Cir. 2003) (" 'The rights to confront and cross-examine witnesses . . . in one's own behalf have long been recognized as essential to due process.'") (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (ellipsis in *Drake*) and citing *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir.2001) ("The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.").

Here, however, the trial court did not curtail cross-examination; rather, Simms' alleged disadvantage flowed from the judge's refusal to grant a one- or two-day continuance. Whether to grant or deny a "continuance 'is a matter "traditionally within the discretion of the trial judge.'" *Drake*, 321 F.3d at 344 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) and citing *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)).

The Appellate Division affirmed the trial court's ruling, summarily rejecting it as "without merit" on direct appeal. A habeas court is "constrained under AEDPA to assume that the Appellate Division's decision was the product of considered judgment." *Drake*, 321 F.3d at 344 (citing 28 U.S.C. § 2254(d)).

In *Drake*, the trial court refused to grant a two-week continuance during petitioner's jury trial for defense counsel to find a psychologist to provide testimony in rebuttal to the prosecution's expert. Trial counsel made the request for a continuance after searching unsuccessfully over a weekend recess for an psychologist with the expertise required.

The prosecution opposed the continuance and the trial court denied the defense request, for reasons that are not stated in the Second Circuit's opinion in *Drake*. The Appellate Division

summarily affirmed the trial court's ruling. The Second Circuit implied that the ruling was erroneous, but not unreasonable in light of the fact that petitioner had "identifie[d] no Supreme Court authority that would command either the two-week continuance in a jury trial, or a new trial by reason of its denial," *id.* at 344.[3] Although the trial court certainly could have granted a shorter continuance than requested, the Second Circuit found that it did "not appear to be an unreasonable application of federal constitutional law to fail to provide a shorter continuance than requested." *Id.*

Comparison of *Drake* with the factual scenario here compels the conclusion that the trial judge did not abuse his discretion and that the denial of a one- or two-day continuance did not abridge Simms' Sixth Amendment and Fourteenth Amendment rights. Respondent points out that the Supreme Court has held that "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." *Morris*, 461 U.S. at 12 (quoting *Ungar*, 376 U.S. at 589); *accord Drake*, 321 F.3d at 344. Respondent argues that Petitioner's request for a "night or two" to prepare for the cross-examination of a witness whose direct examination had lasted only fifteen minutes is not a "justifiable request for delay[,]" *Ungar*, 376 U.S. at 589. Arguably, what is a "justifiable request" for extra time is informed by whether the litigant is a trained attorney or is proceeding *pro se*. I am inclined to agree with Respondent that even though Simms was conducting the cross-examination himself, the length of continuance he requested was not "justifiable" given that the direct testimony of Officer Johns was only fifteen minutes, and that Simms had the assistance of stand-by counsel in

---

[3] The Second Circuit implied that the trial judge erred in refusing to grant any continuance when it noted that "[u]nder AEDPA, a reasonable application of Supreme Court precedent includes an application of law that we consider to be erroneous." *Id.* (citing *Williams*, 529 U.S. at 411).

preparing for the cross-examination. Morever, there is no basis to conclude that the trial judge was "rushing" Petitioner's case to trial or arbitrarily insisting on expeditiousness at the expense of Petitioner's rights. As Respondent points out, the trial court took special measures to accommodate the four different attorneys who were assigned to represent Petitioner and ensured that each had an adequate opportunity to become familiar with Petitioner's case. Indeed, a review of the record demonstrates that the trial judge took special care to ensure that Simms' rights were safeguarded throughout the proceeding.

Finally, Simms has not shown that he was prejudiced by the denial of the requested continuance, and under the circumstances here, prejudice is not presumed. *See United States v. Bakker*, 925 F.2d 728, 735 (4th Cir. 1991) (distinguishing *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), where the trial court ordered a defendant not to consult with his attorney during a regular overnight recess, which was called while the defendant was on the stand as a witness and shortly before cross-examination was to begin; the Supreme Court held in *Geders* that this interference with the attorney-client relationship resulted in *per se* prejudice to the defendant's right to effective assistance of counsel). Here, Petitioner was given two hours to prepare his cross-examination of Officer Johns, during which he had the assistance of his standby counsel. Moreover, he was able to review overnight his attorney's file before completing his cross-examination the following day, there is no basis to conclude petitioner was prejudiced by the denial of his request for a "night or two" before beginning his cross-examination of Officer Johns. *See*, *e.g.*, *Hill v. Ozmint,* 339 F3d 187, 197 (4th Cir. 2003) (finding that although the denial of petitioner's continuance request seems to have resulted from "a myopic insistence upon expeditiousness in the face of a justifiable request for delay[,]" *Ungar*, 376 U.S. at 589, 84 S.Ct.

841, habeas relief was not warranted because petitioner could not show that he suffered any prejudice from the trial court's ruling; although the continuance precluded him from introducing certain evidence (an enhanced audiotape of the victim's final words) and expert testimony providing a foundation for the tape, the expert witness conceded that the excluded evidence would not have aided the jury in deciphering the original, garbled audiotape).

### 3. Denial of Compulsory Process – Failure of Trial Counsel to Issue Subpoenas

Although these allegations are grouped under the "trial court errors" category, they also appear to assert an ineffective assistance claim. Towards the end of the trial, Simms informed that trial court that he wished to call several witnesses whom his fourth and final trial counsel, Attorney Eggers, had not subpoenaed previously. Simms complains that trial counsel had previously "failed to honor" Simms' request that the witnesses be subpoenaed earlier. T.615-17. By that point in the trial, it should be noted, Attorney Eggers had been reappointed as Simms' counsel and was no long merely serving as stand-by counsel. T. 626-629. Importantly, Simms affirmatively requested the reappointment. Furthermore, the reappointment was necessary to preserve some semblance of order in the proceeding since Simms had become increasingly obstructive and uncooperative. *See* T.608-667.[4]

Simms admits that the trial court gave him until the next day to have the witnesses subpoenaed. Trial counsel did not subpoena the witnesses. T.685. The trial court ruled that Simms had waived the right to call them, since his assigned counsel had not subpoenaed them because in his opinion they would not be helpful to the defense.

---

[4] I note that Simms eventually was held in contempt of court and excluded from the court room for a brief period prior to summations when the jury instructions were discussed. T.666-69.

Since Attorney Eggers had been reappointed as Simms' trial counsel at the time Simms indicated that he wanted to subpoena certain witnesses, the decision regarding whether to call those witnesses was Attorney Eggers' to make. *E.g.*, *United States v. Best*, 219 F.3d 192, 201-202 (2d Cir. 2001) ("Similarly, counsel's decision as to 'whether to call specific witnesses–even ones that might offer exculpatory evidence–is ordinarily not viewed as a lapse in professional representation.' *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.)*, cert. denied*, 522 U.S. 846, 118 S.Ct. 130, 139 L.Ed.2d 80 (1997); *see also United States v. Smith*, 198 F.3d 377, 386 (2d Cir.1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.") (internal quotation marks omitted in *Best*)). By demanding a continuance to issue subpoenas for witnesses whom trial counsel had decided would not assist the defense, Simms essentially was asking the trial court to override defense counsel's reasoned, strategic decision; he has offered no legal basis authorizing this. The law does not permit Simms to have his cake and eat it, too: "When a defendant chooses to be represented by counsel, the defendant is obligated to follow counsel's exercise of professional judgement and control of the defense." *United States v. Kopp*, NO. 00-CR-189A, 2007 WL 1747165, at *3 (W.D.N.Y. June 18, 2007) (citing, *inter alia*, *Henry v. Mississippi*, 379 U.S. 443, 451-52, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) (noting that if supported by sound tactical reasons, "counsel's deliberate choice of the strategy [to delay objection] would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here"); *United States v. Wadsworth*, 830 F.2d 1500, 1509 (9th Cir.1987) ("It is equally clear that appointed counsel, and not his client, is in charge of the choice of trial tactics and the theory of defense.")

(citing *Henry*, 379 U.S. at 451-52); *United States v. Hillsberg*, 812 F.2d 328, 333-34 (7th Cir.1987) (denial of substitution motion not reversible error "where defendant and counsel have personality conflicts and disagreements over trial strategy") (quotation omitted)).

To the extent that Simms is alleging a denial of the right to compulsory process, such a deprivation exists only where a defendant "make[s] some plausible showing of how [the desired witness'] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). The Supreme Court has observed that "more than the mere absence of testimony is necessary to establish a violation of the right" to compulsory process. *Id*. (citing *Washington v. Texas*, 388 U.S. at 19). In *Valenzuela-Bernal*, the Supreme Court read the Sixth Amendment to limit, by its own terms, which witnesses are covered by the right to compulsory process; the Sixth Amendment does not grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses but rather guarantees him "compulsory process for obtaining witnesses in his favor," U.S. Const., Amend. 6.  In *Washington v. Texas*, the Supreme Court found the compulsory process clause violated when the defendant was "arbitrarily deprived of 'testimony [that] would have been relevant and material, and . . . vital to the defense.'" 388 U.S. at 16. The Supreme Court in *Valenzuela-Berna* relied upon this language and held that in order to establish a violation of his constitutional right to compulsory process a defendant "must at least make some plausible showing" of how the witness' testimony would have been "both material and favorable" to the defense. *Accord*, *e.g.*, *United States v. Korodgodsky*, 4 F. Supp.2d 262, 268 (S.D.N.Y.1998) (rejecting Compulsory Process claim where petitioner failed to show that the testimony sought from any desired witness would be either material or favorable to his defense).

Here, Simms has made no "plausible showing" of what the testimony of the uncalled witnesses would have been, much less how their testimony would have materially assisted the defense. Indeed, Simms' experienced trial counsel declined to call those witnesses based upon his belief that they would not be favorable to the defense. Because Simms failed to make a plausible showing of how the witnesses testimony would have been "both material and favorable" to the defense, his claim under the Compulsory Process Clause of the Sixth Amendment is without merit. *See United States v. Valenzuela-Bernal*, 458 U.S. at 867; *accord, e.g.*, *United States v. Korodgodsky*, 4 F. Supp.2d at 268.

### 4. Judicial Bias

Simms contends that the did not receive a trial before an impartial judge. In particular, he complains that the trial court placed a ten-minute limit on summations after Simms announced his intention to deliver his own closing argument; required Simms to make an offer of proof with regard to witnesses he wanted to subpoena; and displayed "condescending hostility" towards Simms. This contention concerning the trial judge's alleged impartiality was summarily rejected by the Appellate Division on direct appeal. Review of the record demonstrates that the state courts correctly resolved the claim.

The Supreme Court has established that due process "requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) and citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-22, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), and *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). In order to prevail on a

claim of judicial bias, a defendant must show that he did not receive a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." *Ungar v Sarafite,* 376 U.S. at 584. However, "[m]ere allegations of judicial bias or prejudice do not state a due process violation." *Brown v. Doe*, 2 F.3d 1236, 1248 (2d Cir.1993), *cert. denied*, 510 U.S. 1125, 114 S.Ct. 1088, 127 L.Ed.2d 403 (1994).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves ( i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The Supreme Court has clearly held that "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations omitted). Here, the trial courts' requirement that Simms provide an evidentiary proffer regarding potential witnesses was just such a "reasonable restriction" and did not display partiality.

Simms' allegations about the trial court's display of "condescending hostility" do not give rise to a colorable claim of bias. Contrary to Simms' contention, the trial court went out of its way to accommodate Simms' right to represent himself–notwithstanding his persistent contumaciousness–and to assist him in this regard. *See* T.465 (The Court: "You may continue to represent yourself during this trial. And I will do everything I can to help you as long as things stay in balance."). Simms' contends that other statements by the trial court belie this sentiment;

he notes that at one point, the trial court stated, "And since you're not an officer of the court, I have to recognize the palaver and mendacity for what it is. And you're entitled to that opinion and I certainly respect it." T.467. Simms also accused the trial judge of distracting the jury by "throwing the ink pen" and "banging [the gavel]." T.507. Given Simms' persistent disrespectfulness to all involved in the proceeding and his "continued and disruptive vacillation between insisting on proceeding *pro se* and demanding to be represented by counsel," *United States ex rel. Minter v. Dros*, 403 F.2d 42 (2d Cir. 1967) (*per curiam*), it is apparent that Simms' behavior engendered most of the remarks and conduct by the judge of which he complains, *id.* (denying habeas relief based upon allegations of judicial bias where defendant was contumacious and contradictory). Indeed, in *Liteky*, 510 U.S. at 555, the Supreme Court went so far as to observe that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality charge." The complained-of remarks and mild display of annoyance did not warrant recusal and do not warrant relief here, especially when considered in light of the trial court's overall fairness and temperateness in conducting the trial.

Finally, Simms' complaint about the time-limit on summations fails to demonstrate partiality since the trial court imposed the same limitation on the prosecutor's summation. Thus, Simms was not treated disparately. Morever, setting limitations on the duration of opening and closing arguments is well within the purview of the trial judge to ensure an orderly and efficient proceeding. *See Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and may terminate argument when

continuation would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. In all these respects he must have broad discretion.") (citations omitted).

**C.      Ground Three: Violation of Interstate Agreement on Detainers**

Sims claims the trial court erred in denying his motion to dismiss his indictment based on the failure to bring Petitioner's case to trial within 120 days of his return to New York State from a correctional facility in the State of Pennsylvania in alleged violation of Article IV(c) of C.P.L. § 580.20,[5] the Interstate Agreement on Detainers ("the IAD"). On direct appeal, the Appellate Division rejected this contention as follows:

> Certain delays were attributable to the disposition of motions made by defendant, including time for the People's responses thereto, the hearing conducted with respect to such motions, and the decisions rendered by the court, and thus those delays are excluded from the period of time chargeable to the People. The remaining delays were adjournments requested by defendant after he was assigned new counsel. Contrary to defendant's contentions, there is no requirement that the court make "a formal finding" on the record of good cause for a continuance, and the record establishes that the continuances were reasonable and necessary.

*People v. Simms*, 24 A.D.3d at 1282 (internal citations omitted).

The Second Circuit has held that alleged violations of the IAD are  not cognizable on federal habeas review.  *E.g.*, *Reilly v. Warden*, *FCI Petersberg*, 947 F.2d 43,44 (2d Cir 1991) (specifically addressing the issue of whether an IAD violation is cognizable under 28 U.S.C. § 2254 and holding that it is not; relying on prior precedent that an IAD claim is not a cognizable claim under 28 U.S.C. § 2255, which is a parallel statute to 28 U.S.C. § 2254).

---

[5]      Article IV(c) of C.P.L. § 580.20 provides as follows: "In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

**D.      Ground Four: Unconstitutionality of the Persistent Felony Offender Statute**

Simms was sentenced under New York's "discretionary" persistent felony offender statute, N.Y. Penal Law § 70.10, which he asserts is unconstitutional under the Sixth Amendment as explicated by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny.

In April 2010, in a consolidated appeal of five § 2254 petitions, a panel of the Second Circuit concluded that New York's persistent felony offender sentencing scheme violated the Sixth Amendment, and that the New York courts unreasonably applied clearly established Supreme Court precedent in holding otherwise, but remanded the matters to the district court for consideration of whether those errors were harmless. *See Besser v. Walsh*, 601 F.3d 163, 189 (2d Cir.2010).  A majority of judges in active service then called for the matter to be reheard *en banc*. In a 7-3 decision, the Second Circuit held several months later in *Portalatin v. Graham*, 624 F.3d 69, 73 (2d Cir. 2010), that the state courts did not engage in an unreasonable application of clearly established Supreme Court precedent in holding in, *e.g.*, *People v Rivera*, 5 N.Y.3d 61 (2005), *cert. denied*, 126 S.Ct. 564 (2005), that N.Y. Penal Law § 70.10 does not run afoul of the Sixth Amendment. *Portalatin*, 624 F.3d at 90-94.  *Besser*, which had held otherwise, accordingly was vacated by *Portalatin*. Based upon the authority of *Portalatin v. Graham*, 624 F.3d 69, Simms' *Apprendi* claim attacking his sentencing as a persistent felony offender under N.Y. Penal Law § 70.10 must be denied.

**E.      Ground Five: Harsh and Excess Sentences–Error in Imposing Consecutive Sentences**

As noted above, Simms was convicted of four counts of robbery in the second degree

(N.Y. Penal Law § 160.10 (1), (2)(b)), based upon his participation in two, separate criminal incidents. After being adjudicated a persistent felony offender, he received consecutive indeterminate terms of imprisonment totaling 50 years to life. Simms contends that the consecutive sentences were unduly harsh and excessive.

First, the trial court was permitted in this case to impose consecutive sentences as the circumstances did not mandate the imposition of concurrent sentences under New York Penal Law § 70.25(2). Section 70.25(2) provides in relevant part that

> When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and was also a material element of the other, the sentences . . . must run concurrently.

N.Y. Penal Law § 70.05(2). Here, the two robberies clearly did not comprise a "single act or omission" since they were two separate offenses committed at different places and different times. Consequently, the trial court was not bound by N.Y. Penal Law § 70.25(2) and was well within its discretion in imposing consecutive sentences. *See Willson v. Berbary*, 421 F. Supp.2d 589, 596 (W.D.N.Y. 2006) (Bianchini, M.J.) (holding that the two criminal acts for which petitioner was convicted–the criminal possession of a weapon and the assault–did not comprise a "single act or omission" where they were two separate offenses committed at different places, different times and with different instrumentalities; therefore, the trial court was within its discretion in imposing consecutive sentences for the two convictions).

Second, because the terms of the consecutive sentences imposed in Simms' case are within the statutory range prescribed by New York's Penal Law, and in light of his adjudication as a persistent felony offender, his sentencing claim does not give rise to a question of federal

constitutional magnitude cognizable on habeas review. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.") (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)).

## V.    Motion to Stay the Petition

Recently, Simms filed a motion (Docket No. 11) to have the Petition stayed and held in abeyance ("the Stay Motion") while he returns to state court to exhaust remedies with regard to a claim of ineffective assistance of appellate counsel by means of an application for a writ of error *coram nobis*. Simms alleges that appellate counsel was ineffective because he "refused to exhaust [Simms'] state court remedies." Simms also complains that appellate counsel failed to consult with him sufficiently in preparing the brief submitted on appeal. Simms, in the Stay Motion, does not specifically state which arguments were erroneously omitted by appellate counsel, although he does say that he was denied his right to present his defense "[his] own way"; he was denied the right to "be present at material stages"; and he was denied the right to "show the jury the contradiction of the witnesses who testified against [him]". *See* Docket No. 11. Construing Simms' *pro se* papers with a lenient eye, the Court surmises that he would argue, in his proposed *coram nobis* application, that appellate counsel was ineffective in failing to assert these issues. However, Simms has not provided any factual allegations in support of these claims. Simms explains that he did not file the *coram nobis* application sooner because he thought that appellate counsel was going to raise the omitted issues on appeal, and he asserts that–for some unspecified period of time–he was under "keeplock" status; that the prison misplaced some of his legal papers; and the jailhouse lawyer who was assisting him gave him bad advice.

Simms' current Petition does not contain unexhausted claims and is not a mixed petition. The Motion to Stay thus must also include a Motion to Amend the Petition to add the unexhausted claims of ineffective assistance of appellate counsel. In the interest of judicial economy, I will construe Simms' Motion to Stay as containing a Motion to Amend.

### A. Amendment of Habeas Petitions

A habeas petitioner's motion to amend his habeas petition is governed by Federal Rule of Civil Procedure 15(a). *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001); *see also Fama v. Commissioner of Corr. Srvs.*, 235 F.3d 804, 815 (2d Cir. 2000). Where, as here, a responsive pleading has been served, leave to amend is required. Fed. R. Civ. P. 15(a). Although leave to amend shall be "freely given," Fed. R. Civ. P. 15(a), "district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." *Littlejohn*, 271 F.3d at 363 (citing *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (listing "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment" as valid reasons for denying leave to amend)); *accord, e.g.*, *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir.1995); *Weeks v. New York State Div. of Parole*, 273 F.3d 76, 88 (2d Cir.2001); *Marchi v. Board of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 477-78 (2d Cir.1999) ("Although leave to amend is usually freely granted, it may be denied within the trial court's discretion where the proposed amendment would be futile.") (citation omitted).

A proposed amendment is futile "if the proposed claim could not withstand a motion to dismiss for failure to state a claim upon which relief may be granted." *Lucente v. International*

*Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir.2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.2002)); *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) (stating that here there is no merit to a proposed amendment, leave to amend should be denied).

Under Rule 15, amendments to a pleading may not be made after the statute of limitations has run unless the amendment relates back to the date of the original pleading. Fed.R.Civ.P. 15(c). In the present case, the statute of limitations under 28 U.S.C. § 2244(d)(1) has long since expired.

An amendment relates back if the claim that is sought to be added "arose out of the conduct, transaction, or occurrence set forth" in the original petition. Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has circumscribed the definition of Rule 15(c)'s "conduct, transaction, or occurrence" in the habeas context, holding that it cannot be read to encompass a petitioner's state-court criminal "trial, conviction, or sentence." *See Mayle v. Felix*, 545 U.S. 644, 656, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005). The Supreme Court explained in *Mayle v. Felix* that to hold otherwise would mean that "virtually any" proposed amendments to a habeas petition would "relate back" for purposes of Rule 15(c), since "federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." 544 U.S. at 657 (citation omitted). Instead, the Supreme Court determined that "relation back will be in order" provided that "the original and amended petitions state claims that are tied to a common core of operative facts." *Id.* A proposed amendment, however, will not "relate back" to the date of the original petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.*

The three new claims in Simms' Stay Motion contain all new grounds for relief which differ both in time and type from those set forth in the original Petition. Furthermore, Simms' "undue delay," *Forman*, 371 U.S. at 182, warrants denial of permission to amend. "[D]istrict courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." *Littlejohn*, 271 F.3d at 363 (citation omitted).

## B.     Stay and Abeyance

Furthermore, it would be an abuse of discretion to allow Simms to utilize the "stay and abeyance" procedure.[6] *Id.* at 277. In Rhines, the Supreme Court set forth the criteria for obtaining a stay of a federal habeas petition:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

544 U.S. at 277.

Here, Simms has failed to show that his unexhausted claims are "potentially meritorious" or "not plainly meritless," *Rhines v. Weber*, 544 U.S. at 277. He has provided no factual allegations in support of the proposed claims and they are thus too vague to state colorable grounds for habeas relief. Moreover, his complaint about not being to present his defense in his

_____

        6        "The phrase 'stay and abeyance' means that the petitioner would receive a stay in his federal habeas case, permitting him to return to state court to complete the requirements for exhaustion on any unexhausted claims, and he could subsequently return to federal court to pursue his habeas claims." *Clements v. Maloney*, 485 F.3d 158, 169 (1st Cir. 2007). The "stay and abeyance" procedure is a response to AEDPA's one-year statute of limitations and total exhaustion requirement; it was endorsed by a number of circuit courts, including the Second Circuit, prior to the Supreme Court's decision in *Rhines. See Zarvela v. Artuz*, 254 F.3d 374, 380 (2d Cir.2001); see also e.g., Neverson v.   Bissonnette, 261 F.3d 120, 126 n. 3 (1st Cir.2001) Freeman v. Page, 208 F.3d 572, 577 (7th Cir.2000); Calderon v. United States Dist. Ct., 134 F.3d 981, 986- 88 (9th Cir.1998).

"own way" is belied by the record, which demonstrates that he was given wide latitude by the trial court in representing himself. As to his contention that he was denied the opportunity to "show the contradiction" in the witnesses' testimony, Simms was given full opportunity to cross-examine the prosecution's witnesses at both the suppression hearing and at trial. Finally, Simms has not identified which "material stages" of trial from which he was excluded. Based upon what Simms has provided to this Court, the only conclusion is that the proposed claims are "plainly meritless."

Furthermore, Simms has not demonstrated "good cause" for his failure to exhaust the ineffective assistance claims sooner. As soon as appellate counsel filed his brief, Simms was on notice that the claims he purportedly wanted to include had been omitted. Yet he waited four years before filing the Motion to Stay. Simms alludes to being in keeplock and losing some of his legal papers, but he has not substantiated his claim that he was unable to access his legal materials for the entire time he has been incarcerated. Thus, I am compelled to conclude Simms has not demonstrated "good cause" for his failure to file the *coram nobis* application to exhaust the proposed claims sooner. Under these circumstances, it would be an abuse of discretion to invoke the stay-and-abeyance procedure. Accordingly, Simms' Stay Motion (Docket No. 11) is denied with prejudice.

## VI.    Conclusion

For the reasons set forth above, Petitioner Charles Simms' request for a writ of habeas corpus is denied and the Petition (Docket No. 1) is dismissed. Simms' Stay Motion (Docket No. 11) is denied with prejudice. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a

certificate of appealability.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:      January 6, 2011
                Rochester, New York